Case 21-4142, Matchett v. BSI. Counsel? Thank you, Your Honors, and good morning. Daniel Bozinski, representing the appellant, Ms. Fredonna Matchett. May it please the Court. This case is about pay-to-pay fees. These are fees that mortgage servicers charge consumers for paying via a certain method, be it over the phone, online, by mail. This is a very lucrative thing for mortgage servicers. It doesn't cost them much to service payment in this manner, and they charge exorbitant fees to do so. Ms. Matchett alleges, well, we can begin with this. Ms. Matchett had a mortgage. During the course of her mortgage, BSI became her mortgage servicer. Counsel, may I interrupt you? I'm familiar with the basic facts of the case. I'm wondering if you can help me understand how Bernanke, if it's pronounced Bernanke, or I know there's some confusion in the district court about the pronunciation, but why doesn't Bernanke control here? Sure, Your Honor. So Bernanke, and I think we have to talk about Carley at the same time because Bernanke relies on the Utah Supreme Court's decision in Carley, is limited to an analysis on whether there is a more specific statute that addresses the specific wrongful conduct at issue. Here, the wrongful conduct is pay-to-pay fees. There is no statute in Utah that governs pay-to-pay fees and mortgage servicers. There is a statute that governs mortgage servicers, but it is silent on pay-to-pay fees. And so, Ms. Matchett has no alternative avenue to pursue relief. Well, I don't find that piece necessarily persuasive as a matter of law, but my question is, Bernanke talked about complaint of conduct, right? So we're not interested in the fact that the industry is regulated. Is that your position? We should be looking at precisely what the cause of action is. Is that your argument? Yes, Your Honor, and I'll point the court to two Utah Supreme Court's cases. In Carley, the plaintiff brought a UCSPA claim based off of unfit premises in the place that they were renting. The Utah Supreme Court, in that case, looked at the Utah Unfit Premises Act, said this specific conduct is governed by this statute. This statute provides an avenue of relief. You can't bring a claim under the UCSPA for something that is governed by another statute. In the Woodhaven case that was cited in the briefs, there, the plaintiff brings a UCSPA claim for unauthorized termination fees in a residential contract, residential leasing contract. There, the court said it's not preempted by the UCSPA because the Unfit Premises Act doesn't have anything to do with the termination fee. So that's the distinction. As big picture, I think it's important to point out that the UCSPA is intended to be a liberal statute, liberally applied to protect consumers. The only circumstances where it's been preempted are cases where there is another specific statute governing the specific conduct at issue. But counsel, under the USPCA, you are, as I understand it, contending that that act does not explicitly prohibit the conduct in this case, but rather you hang your hat on the deceptive practice portion of that act.  Correct, Your Honor. Now, help me by pointing to the complaint where you plead a deception in this case. But what paragraph specifically and what language do you use? Sure, Your Honor. I could pull it up here in a second. But the thing is... While you bother to pull it up, we had a hard time finding any such allegation of deception in the complaint because this is a motion to dismiss, right? Sure, Your Honor. I will point out, Your Honor, that there's two parts to the Utah Consumer Sales Practice Act. One, there is the deceptive... Well, are we proceeding under Utah law or I think it's federal court or under the federal statute? It's a Utah statute, Utah Consumer Sales Practice Act. And it has two parts. One is deceptive. Are we proceeding, what, on diversity or...? So that's the other thing, Your Honor. This case was originally filed in state court. Right. Just about pay-to-pay fees. During the course of the case, after this case was filed, BSI started adding additional charges to my client's loan. We amended the complaint at an... Attorney's fees, right? Yes, attorney's fees that they incurred defending this case. Right. We had an FDCPA claim. It then was removed to federal court under federal question. But that has since been resolved and was... So we're back to state court? That's my position. I think that it should go back to state court after this court... Let me stop you for a minute. You're not... You weren't back to state court because the district court didn't remand it after you resolved the... FDCPA, whatever, claim. The district court went ahead and ruled on these. And so you want to be back in state court. But you're dealing with a situation where the federal district court ruled against you. So you're not in a situation where you're, you know, necessarily back to state court. Correct, Your Honor. This court and district court would have discretion to apply pendant jurisdiction over the state claims. Based off of expectations and policy, our position is the prudent thing would be to send it back to state court. These are important state questions. Well, that's not what I meant by my question, which is basically metaphorically saying we're really looking at state law rather than federal law. On this question, is that what your allegation is? Correct, it's all state law. Then where in your complaint do you meet the deceptive practice claim under state law? Sure, Your Honor. So the allegation of deception is based off of the phone call that Ms. Matchett has with BSI. After she cannot make her payment online, she calls them, asks, how can I make this payment? And they tell her you can make it two ways. You can make it over the phone and incur a convenience fee, or you can do it by Western Union, which has a greater fee. Why should we assess a deception based on the phone call and not, is that the appropriate time for us to look at the deceptive act? She had notice from other points in time, other communications from the servicer about all of the alternatives for payment. So when we assess deception at that point and not from the point of the phone call? I think that you can still take a look at it from the point of the phone call. If they send a notice saying you can make payments through these methods, and then somebody calls and says, how can I make a payment? And then they exclude free payment methods. That's still deceptive. They're the ones that have the information. For all my client knows, it could have changed that these other methods are no longer available. And the other thing I would point out, Your Honor, is that those allegations are not in the complaint. The only thing that supports that position is a exhibit that was submitted by defendants in response to the motion to amend or motion for leave to amend. And that's a matter outside of the complaint. It's not referenced in the complaint, that document. Are you talking about the account statements? No, the accounting state, well, yes, the accounting statements are not referenced. I was talking about the notice of transferral. The accounting statements are from 2021. And these transactions that are in question are from 2017. So the 2021 accounting statements wouldn't have any, I mean, perhaps some slight relevance. Did you make that objection in the district court? Yes. Yes. Yes, we did. We objected to all of the outside materials that came in on this motion to dismiss. How do we reconcile that with your concession in your brief, on your response? What concession? It seems, well, you know what I'm getting at, right, that there's a contention in the case that in responding to the motion to dismiss, you conceded that you were aware of other forms of, other options other than the pay-to-pay. That was not my concession, Your Honor, at that point. It was not, it was that perhaps in discovery, that would come out. But at that stage, at the pleading stage, it would be inappropriate for the court to consider outside materials and to contravene factual allegations in the complaint that my client didn't know. And again, I think it's, the phone call still matters, even if she had knowledge, because she's calling, she's seeking help, and they omit on seven different occasions, the fact that there is a free method of payment. And they make her go and use the phone and charge her 20 bucks each time. Okay, let me, let me jump in here for a minute. So, just, just on a, on drilling down on your objection to the use of these statements. When you objected to them at the district court, your objection was in the nature of a general objection to considering matters outside the pleadings. Is that right? Yes, under Rule 12D, we, our objection was it shouldn't be included or considered. And if they are considered, it should be converted into a summary judgment motion with the parties entitled. You did not raise at that time this issue of you can't consider them because they were from 2021. Is that right? I can't recall if I did it in the briefing, but I did it in oral argument. Okay, fair, fair enough. Go ahead. Okay, just quickly, the district court committed essentially three errors in dismissing the case and doing it without prejudice. And that was one, in its decision to contravene the allegations and find that this payment was voluntary. Two, in finding that these pay-to-pay fees are authorized in the mortgage agreement. They are not. The only line in there that the court relied on was one that said absence of express authority doesn't mean that we can't charge additional fees. But that line is in a paragraph related to services and charges in connection with borrower's default. And that is not this. And then, just quickly, the UCSPA is not preempted by the MLSA in this case because the MLSA does not govern pay-to-pay fees. Let me ask you a question. Let me just jump in here. And I can see the frustration on your face. You'll never get all of your arguments in one of these cases. So, but anyway, on the preemption idea or the idea that there's a more specific, you know, all-encompassing statute that might control here. Is it your position that if it's a highly regulated industry with a more specific statute that even may not provide the relief you want? That if it doesn't specifically address the one item that you want to talk about, that it can't preempt? Yes. Yes, Your Honor. If there is a statute, even if it governs the industry, but it doesn't address the deceptive or unconscionable act that's being attacked in the UCSPA claim, it's not preempted. Even in cases involving field preemption? My apologies, Your Honor. What do you mean by field preemption? That's okay. It's, you got a minute. I'm not going to take your time. Sorry. I'm happy to lecture about the differences, but that's not my role. I'd like to reserve the rest of my time for rebuttal. Thank you. Thank you, Counsel. Counsel for the FLA. Good morning, Josh Huber, Counsel for, I believe, BSI Financial Services, and may it please the Court, I want to start, obviously, with the UCSPA claim, because that seems to be on top of everybody's mind, and BSI's argument below and here was fairly simple, that there were three independently dispositive reasons why that claim failed. The first was Bernanke, which, in our view, is a white horse case, if there ever was one. In Bernanke, the parallels between Bernanke and this case are undeniable. Both involve plaintiff mortgagors suing defendant mortgage servicers for violations of the UCSPA, and both allege that the basis for that UCSPA claim was the charging of unauthorized or improper financial. Was that the complaint of conduct in Bernanke? I thought that the complaint of conduct there had to do with what was on the statements, the issuing of statements and sort of inaccuracies there, and not the complaint of conduct here that has to do with specific charging of fees. Well, Judge Rossman, it involved both. In Bernanke, there was what I'll call a RESPA QWR component. The plaintiff had sent, in a letter writing campaign, something along the lines of 60 letters asking for information on her loan, and the content of those letters was complaining about unauthorized fees and charges. And in the complaint that was dismissed in Bernanke, the plaintiff specifically alleged RESPA claim and then separately alleged a UCSPA claim where one of the supposedly deceptive or unconscionable acts or practices was the mortgage servicers charging of unauthorized fees. So, the case did involve both, and both the type of plaintiff and... Is, when Bernanke referred to or cited the MLSA as not just an example of a regulated industry, but as here's the specific provision that is the specific over the general, is it your contention that were we writing this opinion, that's what we also would cite? That there is a specific, the same specific provision that is the specific over the general in Bernanke is the same one that applies here? Your Honor, I would submit that the MLSA does have a more specific provision that indicates the intent to specifically regulate and address fees and charges. There is a, I believe it's section 70D2305. It's entitled fee restrictions. So, when the legislature enacted the MLSA, they spoke to certain types of fees and charges that can and can't be imposed. The fact that they elected in their wisdom not to include pay-to-pay fees does not mean that there isn't a more specific statute and that it doesn't address that aspect of the mortgage or mortgagee relationship. But that section only, that section only applies to lenders or brokers, right? And it prohibits them from accepting a fee or deposit from an applicant for a mortgage loan absent a written statement signed by the applicant. I mean, that is a fee restriction, I guess, but it doesn't apply to pay-to-pay fees. No, I don't see how it does. Explain to me how that controls here. Well, I don't disagree with you that it doesn't address pay-to-pay fees, but I think that gets to their more narrow reading of the preemption issue. And it's that there is a more specific statute that governs the relationship or the transaction at issue. Not that there is a granular provision that entitles them to win under the more specific statute. And in, I believe, counsel's response when you asked about that issue, they discussed the distinction between Carly and Woodhaven. I think Woodhaven was illustrating that because in Woodhaven, the court was dealing with a contract dispute. It was an early termination of a lease agreement. And whether or not a specific liquidated damages clause violated the UCSBA. The court, in distinguishing Carly, didn't say, we're not going to follow it because there isn't a more specific statute that either allows or disallows liquidated damages clauses. It did so because there was no more specific statute that governed the contractual relationship. Okay, so this is actually very helpful to me, at least. Your definition of complained of conduct, which is the language from our case for Bernanke, is not specific cause of action. It's relationship, right? It's the relationship of the regulated entity to the consumer. Yes, Your Honor. And I will add, I want to add one more layer to this discussion because it's something that came out in counsel's opening and that they noted in their brief. And even adopting their more narrow view of the statute of the preemption issue. If, as they contend, there has to be another state statute that specifically addresses pay-to-pay fees. He acknowledged in his argument and in the briefing that there is such a statute and it's the Utah Credit, I'm sorry, Collection Agency Act, the UCAA. And the UCAA, when the legislature enacted that, they specifically authorized debt collectors to collect convenience fees for payments that are made over the phone. And while they relied upon that statute to distinguish these cases, I'd invite the court to take a look at it because that statute defines, it applies to anybody who meets the statutory definition of a quote debt collector under the FDCPA. And mortgage servicers like BSI, when they are assigned a mortgage that is in default, as the plaintiff alleges in her live complaint, hers was, are debt collectors under the FDCPA. So to the extent we're looking for a more direct statute that expressly addresses the granular type of fee that's involved, Ms. Matchett has pointed it out. It's in her brief and it's the UCCA. Are you then saying that a service fee, like this $20 fee here, can only be charged if the borrower is in default? No, Your Honor. The UCAA... What are you arguing? Because that's what I hear at this side of the bench. I'm arguing that, you know, adopting their view... You're arguing that a loan servicer becomes a debt collector when a mortgage is in default and that, therefore, a $20 fee is authorized by the statute. That's the argument I heard. Okay, so... Did I miss here? It's very close. The argument is that there is a more specific statute that allows debt collectors to charge these fees. Right, but a loan servicer is not a debt collector in the parlance of the industry. But within the scope, within the defined term of third-party debt collection agency in the UCAA, it is. Because that statute specifically says it applies to any entity that meets the debt collector definition of the FDCPA. Right, so I get back to my point that your argument has to be understood to mean that a debt servicer, a loan servicer, of which there are hundreds across the country, becomes a debt collector when a mortgage goes into default. If it is in default at the time it is assigned or acquired by the mortgage servicer, yes. Only if? Yes, Your Honor. The consensus view of the FDCPA is that a third-party mortgage servicer, if it begins servicing or is assigned the loan while it is not in default, then it is not an FDCPA debt collector. But if the loan is already... And therefore, under those circumstances, the $20 fee would not be authorized. Correct, that is correct. But in this circumstance, they have specifically alleged in their pleading that at the time Ms. Matchett's loan was assigned to BSI, it was in default, and therefore BSI is a debt collector within the definition of the FDCPA. And you say that as we write the opinion in this case, we should write it that narrowly and say that we do not speak to the collection of a service fee when a borrower is not in default. That would be an appropriate opinion. And again, it goes to, in Bernanke, we believe the MLSA standing on its own, and the Bernanke case resolved the UCSPA claim, but even adopting their position or their interpretation of that issue, the statute that they pointed out unequivocally addresses that specific type of fee and authorizes it. Did you make that argument below and here? Your Honor, we did not specifically discuss the UCAA, and I'm not really, in my opinion, raising a new argument. The Bernanke argument is that there's other more specific statutes. We cited the MLSA as an example, and they brought up this other statute in their briefing. I will confess it may have been a matter of inadvertence that I didn't catch it the first time they put it in there. But as I was looking it over, it occurred that, yes, it does specifically apply to mortgage servicers under the facts that are alleged. Let me ask you a different question. So, there is floating around in this case the specter of a free option to pay. And it seems that the complaint from your opposing counsel about that is that that's outside the complaint. And recognizing that, I want you to tell me, if we were to take notice of the idea that there's a free option to pay as well, what does that do to the case? Your Honor, the fact that there were other free options is relevant only to one of the three UCSPA arguments. And that's that the plaintiff failed to, I'm sorry, Ms. Matchick failed to allege a plausibly deceptive or unconscionable act of practice. And the basis for that was the Utah Court of Appeals opinion in Olson v. Phoenix. In a somewhat analogous situation, the court considered a claim under the UCSPA by a student who was charged a $60 e-resource fee when she chose to access electronic materials for her courses. She claimed that that fee was not specifically authorized in her tuition agreement and it violated the UCSPA. And the court looked at that and said, no, this is a separate point of sale agreement. And it was optional. You didn't have to have the electronic version of your materials. That was an optional service that you chose to avail yourself of. And there was a disclosed fee for it that you agreed to pay. And so the optionality of the payment services that Ms. Matchick chose to use is relevant only for that issue. And I'll continue and tell the court why I think what was considered was appropriate. In the motion to dismiss, in the briefing and the argument, we attached the note and the deed of trust. Those are the contract documents that they claim we breached. I don't think there's any dispute that those are referenced and essential to the complaint. In the complaint, they also specifically said that we misstated the amounts owed on billing statements in violation of the FDCPA and UCSPA. And so there's a specific reference to our billing statements in connection with the UCSPA plan. And then in addition to those, we also included a copy of the BSI's website. Now, the only written objection that I recall was to the website, which the court declined to consider an oral argument because it didn't have to. But based upon, one, the note, which directed Ms. Matchick to make her payments to a specific address, and the billing statements, which outlined all of the various options that are available. Counsel, I have specific questions about the note and the statements. As to the statements, you're not taking the position that documents that post-date the filing of the complaint make the allegations in that complaint implausible, are you? Not alone. I will agree with you, Your Honor. Okay. So let me ask one more question. And the other question is about the note. Is the address in the note, isn't it to Countrywide? Yes, Your Honor. It was to the original lender. That's the Countrywide address. So if she had sent a payment there, what would have happened? Presumably, it would have been sent back. Would have been sent back. So if we don't consider the note, we don't consider the statements, what's left? It's the third issue that you discussed with counsel, and that was the admission in their briefing. When presented with these issues, in their briefing, they unequivocally stated that they were left with no choice to pay by phone because they either had to mail their payments and get a late fee or pay by phone and incur the convenience fee. And I don't think there's a clear example of a judicial admission then stating that was the choice she was faced with. And so it really, it clarified what the petitions, the complaint said in terms of having no choice but to make a payment by phone. And so the court, even if it didn't consider the billing statements, even if it didn't consider the note, it was in the brief. That was the argument they made. And so the notion that there was ever a situation where they had no other option. And I'll quickly, in the last four seconds, the claim that they weren't told or they had this phone call, that didn't appear until the Second Amendment complaint, which the court declined leave to file. And that's what I'll leave it there. Judge Carson, may I ask, Judge Carson, may I just ask one quick follow up question? For sure. Go ahead. Counsel, I think I understand your argument about the admission or concession. Can you point us to any authority for the proposition that in adjudicating the issue of plausibility in the 12B6 context, a court can consider a concession as part of its plausibility analysis? Because the case that the district court cited is about something else. It's about documents. So I'm wondering if you have any authority for the specific proposition that you're advancing. Your Honor, I would refer you to two cases from this circuit. And it's plastic container court versus Continental Plastics of Oklahoma. And that case site is 607 F2D 885. The pen site is not page 906. And the second case is Guidry versus Sheet Metal Workers International Association. And that case site is 10 F3D 700. And the specific page is 716. And both those cases reference the proposition that statements made in briefs may be considered admissions at the court's discretion. Thank you, Counsel. Thank you, Your Honor. Thank you, Counsel. We'll let opposing counsel go ahead and complete his argument. Let's give him one more minute. Thank you, Your Honors. I apologize for blinking on field preemption, Your Honor. There could be a situation where I think field preemption could bar the UCSPA. My argument here is that the regulations on mortgage services are not that significant as to warrant field preemption. And I will point out that the MLSA specifically says this does not preempt any other remedies you may have for breach of contract or other wrongful acts. Thank you. Your Honors, I wanted to point out one other Tenth Circuit case on this preemption issue. It was not, I don't believe, cited in my brief. But I think it helps as to the UCSPA. It is Burnett versus Mortgage Electronic Registration Systems, Inc. The site is 706F-3D1231 from 2013. Faced with the same preemption issue, and I'm quoting, Utah Supreme Court has held the UCSPA may be preempted by a more specific state law that addresses the precise aspect of the relationship at issue. And then it cites DeCarli. That's my position. That's the position of the Tenth Circuit and Burnett. There has to be a law that addresses this precise aspect of the relationship. If there is, you don't get a UCSPA claim. But if there isn't, you can bring it. There is nothing that governs it. And that's the case here. They cite the UCAA for the proposition that they could have brought or they could have charged these fees. But the UCAA was amended in, I believe, 2020 to allow debt collectors to charge these fees. They weren't allowed to do it in 2017. It certainly weren't governed by that statute back in 2017. There is a UCSPA for charging pay-to-pay fees. So you have one more minute. I'll go ahead and hit you with a question. So your discussion about the choices given on the telephone call, those are not part of the first, your original complaint. Is that right? The allegations about the phone call? Okay. So those allegations were made in a complaint that was never live, so to speak. Correct, Your Honor. In the original complaint, it talks about communications with BSI and the fact that Matchett believed she had no other choice but to pay over the phone. Okay. We elucidated that. Did you file a motion for leave to amend with a complaint attached to it? Yes, Your Honor. We filed a Rule 59e motion asking to amend the judgment, allow leave to amend, and we attached the complaint. All right. So that's a little bit different than what I was asking about. You were proceeding under a different statute than the normal leave statute when you were attempting to. You'd already lost. Right. We had asked for leave at oral argument. The court denied it, and then we filed a formal motion. Okay. Thank you, counsel. Judge Lucero, Judge Rossman, do either of you have any more questions? No, thank you. Okay. Thank you, Your Honor. The case will be submitted and counsel are excused.